**Louise LAMPHERE et al.**

v.

**BROWN UNIVERSITY et al.**

**Civ. A. No. 75–140.**

United States District Court,
D. Rhode Island.

July 21, 1976.

Jordan Stanzler, Providence, R.I., for plaintiffs.

DeWitte T. Kersh, Jr., Richard A. Sherman, Providence, R.I., J. Harold Flannery, Stephen Detusch, Boston, Mass., for defendants.

## OPINION AND ORDER

PETTINE, Chief Judge.

This is a Title VII sex discrimination action brought by a former member of the Brown University faculty against Brown University and several of its officers and agents. Jurisdiction is based on 28 U.S.C. §§ 1331(a) and 1343. The case is presently before the court on plaintiff's motion for class certification.

1. Rule 23(a) provides:

"*Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are

### A. The Plaintiff's Claim

In May, 1974, the plaintiff Louise Lamphere, who was at that time an Assistant Professor in the Department of Anthropology at Brown University, was denied tenure and promotion by the defendants. As a result of defendants' actions, plaintiff's employment at Brown was terminated in June, 1975. The plaintiff alleges that the denial of tenure and promotion was made on the basis of sex, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and that the discrimination the plaintiff suffered is but one instance of a pattern and practice of sex discrimination that has pervaded and continues to pervade the employment practices of the defendants with respect to recruitment, hiring, promotion, contract renewal, and tenuring of women faculty members. The class which the plaintiff seeks to represent is described in the Amended Complaint as:

"Women faculty members who are now employed at Brown University; might become employed at Brown University; were employed at Brown University since 1972; or might have been employed at Brown University, but for the discrimination complained of herein."

■ The plaintiff, as the party seeking to utilize the class action device in this case, has the burden of showing that the requirements of Fed.R.Civ.P. 23 have been satisfied. *Senter v. General Motors Corp.,* 532 F.2d 511, 12 F.E.P. Cases 451, 459 (6th Cir. 1976); *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974); *Cook County College Teachers, Local 1600 v. Byrd,* 456 F.2d 882, 885 (7th Cir.), *cert. denied,* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). The plaintiff must first demonstrate that the four prerequisites to a class action outlined in Rule 23(a)[1] have been met, and then show that the class she seeks to represent falls within

questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

one of the three subcategories of Rule 23(b).[2]

■ Most courts have held that in cases brought under Title VII of the 1964 Civil Rights Act, the requirements of Rule 23 must be applied liberally. *See, e. g., Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 50 (5th Cir. 1974), *cert. granted,* —— U.S. ——, 96 S.Ct. 2200, 48 L.Ed.2d 814, 44 U.S.L.W. 3670; *Bing v. Roadway Express, Inc.,* 485 F.2d 441, 446 (5th Cir. 1973); 7 Wright & Miller, Federal Practice and Procedure: Civil § 1771 at 663. *Cf. Yaffe v. Powers,* 454 F.2d 1362, 1366 n. 2 (1st Cir. 1972). The justification for this liberal application of Rule 23 is both the important public policy in vindicating the right to equal employment opportunities guaranteed by Title VII and the fact that in almost every case, a "suit for violation of Title VII is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic; *i. e.,* race, sex, religion, or national origin." *Bowe v. Colgate-Palmolive Corp.,* 416 F.2d 711, 719 (7th Cir. 1969). The plaintiff is not entitled to automatic class certification simply because she has brought a Title VII action, of course. While the requirements of Rule 23 may be applied liberally in Title VII cases, they certainly cannot be waived altogether.

### B. Defendants' Objections to Scope of Plaintiff's Class

The plaintiff's proposed class, as described in her Amended Complaint, consists of 20,100 members.[3] A class this large clearly satisfies the requirement of Rule 23(a)(1) that the class be "so numerous that joinder of all members is impracticable." The defendants, however, vigorously object to certification of a class of such broad scope, on the ground that the class fails to satisfy the remaining three requirements of Rule 23(a): that there be questions of law or fact common to the class; that the claims of the class representatives be typical of the class; and that the class representatives fairly and adequately protect the interests of the class.

More specifically, the defendants contend that the class should be restricted to women faculty in Brown's Anthropology Department and not extended to women faculty in other academic departments at Brown, and further that the class should include only those women faculty members allegedly discriminated against in tenure decisions,

2. Rule 23(b) provides:

"*Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

3. The plaintiff alleges that the number of women faculty who have been employed at Brown since 1972 is 100; that the number of women who might apply for employment and/or become employed on the Brown faculty is estimated to be 10,000; and that the number of past women potential and actual applicants for employment on the Brown faculty is estimated to be 10,000.

and not those women faculty members and potential women faculty members who have allegedly been discriminated against in decisions relating to initial hiring, promotion at lower levels, and contract renewal. Thus defined, the plaintiff class, in the defendants' view, would be too small to satisfy the numerosity requirement of Rule 23(a)(1).[4] Finally, the defendants argue that, no matter how the class is defined, the plaintiff cannot be its fair and adequate representative because, in seeking a promotion and tenure, she places herself in a position directly adverse to the interests of other class members, given the limited number of tenured positions expected to be opening at Brown in the near future.

### C. The Across the Board Approach

▇ In support of the large scope of the class she purports to represent, the plaintiff relies on the so-called "across the board" approach first developed by the Court of Appeals for the Fifth Circuit. *See, e. g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969). The plaintiff has alleged that the discrimination she has suffered in being denied tenure is merely one example of a pattern and practice of discrimination employed by the defendants which affects women faculty members and potential women faculty members in all academic departments and in all aspects of hiring and promotion. Such allegations of across the board discrimination underlying a defendant's employment policies have been viewed by many courts as allegations of facts sufficiently common to and typical of employment claims which are based upon different manifestations of that single underlying policy to permit the joinder of all such claims in a class action. *E. g., Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975); *Barnett v. W. T. Grant Co.,* 518 F.2d 543 (4th Cir. 1975); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679; *Rodriguez v. East Texas Motor Freight, supra; Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir. 1974); *Piva v. Xerox Corp.,* 70 F.R.D. 378, 11 F.E.P. Cases 1259 (N.D.Cal.1975); *Leisner v. New York Telephone Co.,* 358 F.Supp. 359 (S.D.N.Y.1973).

The rationale underlying the across the board approach has been well stated in many of the cases cited above, *see especially Piva v. Xerox Corp., supra,* and it need not be repeated in detail here. Suffice it to say that most courts that have been confronted with the issue have expressly or effectively adopted this approach,[5] and this court agrees with the majority position and adopts it as its own. The defendants' suggestion that the Court of Appeals for this Circuit has refused to follow the across the board approach is not accurate. The First Circuit, in fact, has not yet had occasion to address the issue. In *Jackson v. Dukakis,* 526 F.2d 64 (1st Cir. 1975), the court held that the plaintiff, who had never even applied for a job with the defendant employer, had no standing to sue in any capacity, whether as an individual or as a class representative. It is true that the court in *Castro v. Beecher,* 459 F.2d 725 (1st Cir. 1972), affirmed a district court ruling that plaintiffs challenging discriminatory police entrance examinations could not represent those who were deterred from even taking the examination, but that case was brought under a different statute, 42 U.S.C. §§ 1981, 1983, and the court acknowledged that more liberal standards of class certification are generally applied in Title VII cases. *Id.* at 732 n. 8.

▇ In applying the across the board approach, this court rejects the defendants' contention that the plaintiff cannot repre-

---

4. According to the defendants, the plaintiff can properly represent only women members of the Anthropology Department who have not been awarded tenure. Since 1968, only four women department members, including the plaintiff, could have been awarded tenure.

5. No circuit court opinions have affirmatively rejected the across the board approach, although several district courts have refused to adopt it. *E. g., White v. Gates Rubber Co.,* 53 F.R.D. 412 (D.Colo.1971); *Burney v. North American Rockwell Corp.,* 302 F.Supp. 86 (C.D. Cal.1969).

sent women faculty members and potential faculty members from academic departments other than Anthropology. The thrust of the defendants' argument is that employment decisions at Brown are separately made by each academic department. Thus, there are no uniform, university-wide employment practices, and the position of the plaintiff cannot be considered typical of, or having facts in common with, that of women in other academic departments. In support of this position, the defendants have cited several cases where courts have refused to permit plaintiffs to represent employees or potential employees in departments or branch stores other than those with which the plaintiffs were connected and which had autonomous hiring authority. *E. g., Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975); *Streeter v. Farmer Jack's,* 11 F.E.P. Cases 1310 (N.D. Ohio 1975).

 The facts as they presently appear to the court, however, do not support the defendants' assertion that there is not a "single font" from which all manifestations of the discrimination allegedly affecting the proposed class flow.[6] The plaintiff has alleged the existence of university-wide employment practices and policies in her complaint, and the evidence which has thus far surfaced during discovery does not justify abandonment of the usual policy of accepting the plaintiff's factual allegations as true for purposes of class certification.[7]

6. The plaintiff contends that even if the defendants could show there was no single source of discrimination at Brown, this would not defeat the plaintiff's class, citing, *e. g., Martinez v. Bechtel Corp.,* 11 F.E.P. Cases 898 (N.D.Cal. 1975); *Leisner v. New York Telephone Co.,* 358 F.Supp. 359 (S.D.N.Y.1973). Since the defendants have not made such a showing, however, the Court need not reach this question.

7. The defendants called the Court's attention to the affidavits to two department chairmen and the Provost of Brown University which indicate that individual academic departments at Brown have "a major voice" in setting their own employment policies subject only to "a very limited central review by the University administration. *Defendants' Memorandum in Opposition to Certification of a Class* at 18. The plaintiff, on the other hand, argues that the minutes of

*See Martinez v. Bechtel Corp.,* 11 F.E.P. Cases 898, 903 (N.D.Cal.1975). The defendants' argument for restricting the class to the Anthropology Department goes to the very merits of the plaintiff's claim and need not be ruled on at this early stage of the proceedings. As the district court in *Martinez* wrote in response to a similar argument:

"Of greater significance is the fact that plaintiff claims that the discriminatory employment practices are company-wide and any question as to whether the alleged unlawful discrimination is individually practiced or a company policy is a question common to the claims of the class which must be entertained at subsequent hearings on the merits of plaintiff's case. Again, there is no provision in Rule 23 for weighing the merits of a plaintiff's claim to determine whether or not class treatment is proper. *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)." *Id.* at 903–04.

Thus, at this stage of the proceedings, the plaintiff's across the board allegations must be considered valid, and where the across the board approach has been utilized, courts have shown little reluctance to certify classes across departmental lines. *See, e. g., Martinez v. Bechtel Corp., supra; Rosario v. New York Times Co.,* 10 E.P.D. paragraph 10,450 (S.D.N.Y.1975); *Leisner v. New York Telephone Co., supra.* The de-

several meetings of the University's central "Committee on Appointments and Promotions" and certain answers to interrogatories support her contention that all employment decisions "are tightly controlled by the central administration" and that all decisions are channeled through the University's pyramidic organizational structure beginning with the various academic departments but continuing on to include the Committee on Appointments and Promotions, the President of the University, and the members of the University corporation. Plaintiff's Reply Brief on Class Action Certification at 1–2. Thus the evidence presently before the Court is mixed, and I cannot conclude that the defendants have adequately demonstrated that the plaintiff will be unable to prove her across the board allegations at a hearing on the merits.

fendants cite several cases in which classes were not certified across departmental lines because there was no "nexus" between the named plaintiffs' claims and those of members of other departments. However, "nexus is a matter depending on the facts and circumstances presented in each case," *Knox v. Meat Cutters,* 11 F.E.P. Cases 1327, 1330 (E.D.La.1975), and an examination of the facts in the cases cited by the defendants reveals that they are completely distinguishable from the case at bar.

In *Piva v. Xerox Corp., supra,* for example, the court held that the plaintiff, a former employee in the defendant's sales department, could not represent the defendant's office and clerical employees, but in that case, the court noted that the plaintiff never alleged any discriminatory practices affecting these employees in the complaint. 11 F.E.P. Cases at 1266. In *Wells v. Ramsay, Scarlett &. Co.,* 506 F.2d 436 (5th Cir. 1975), the court held that the plaintiff, a black foreman who was a salaried employee, employed on a monthly basis, could not represent a class consisting of black longshoremen, who were assigned employment at an hourly wage on a daily basis through their union. Similarly, in *Knox v. Meat Cutters, supra,* the court held that a black truckdriver, a production worker paid at an hourly rate under a union contract, lacked sufficient nexus with office and clerical personnel, who were nonunion, salaried personnel, to represent them in a class action. These cases might have had greater relevance if the plaintiff in the present case were seeking to represent clerical or maintenance employees at Brown as well as academic personnel, but she is not, and I find that there is a sufficient nexus between her claims and those of members of other academic departments to permit certification of a class across departmental lines.

This court also rejects the defendants' argument that the across the board approach does not permit the plaintiff to represent the possible claims of women concerning discrimination in hiring, contract renewal, and promotion to non-tenured faculty positions. Again, the evidence present-

ly before the court is disputed as to whether or not the major criteria used in making tenure decisions differ markedly from those used in reaching other faculty employment decisions. But regardless of whether or not such criteria differ, the plaintiff has alleged that there is at least one important criterion common to and typical of all faculty employment decisions made at Brown: discrimination on the basis of sex. Where such allegations have been made, many courts have allowed plaintiffs alleging discrimination in one type of employment decision to represent a class of persons discriminated against in other types of employment decisions as well. *E. g., Wetzel v. Liberty Mutual Insurance Co., supra; Johnson v. Georgia Highway Express, Inc., supra; Rodgers v. U. S. Steel Corp.,* 69 F.R.D. 382 (W.D.Pa.1975); *Rosario v. New York Times Co., supra.* Thus the defendants' argument on this point, like their argument on cross-departmental certification, addresses the merits of the plaintiff's claim and does not justify a restrictive result on the procedural question of class certification.

The defendants argue, however, that the across the board approach is not well suited for certifying classes in Title VII cases where each employment decision in question concerns the unique and individual qualifications of each candidate for varying high level positions, where each appointment must inevitably be made on subjective as well as objective criteria. Numerous courts confronted with such arguments in similar cases, however, have in well-reasoned opinions ruled that such classes could be certified. In *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 521 (S.D.N.Y.1973), for example, in certifying a class of women law students and lawyers allegedly discriminated against by a New York law firm, the court wrote:

"There is no doubt that hiring a professional requires weighing many subjective factors contributing to the applicant's qualifications *as a whole,* above and beyond the more objective academic qualifications. We cannot agree, however, that this fact immunizes discriminatory prac-

tices in professional fields from attack on a class basis. See *Hecht v. Cooperative for American Relief Everywhere, Inc.,* 351 F.Supp. 305 (S.D.N.Y.1972), which involved female employees at the executive level. The common question in both professional and non-professional employment situations is not whether one individual is better qualified than another, but whether that individual is considered less qualified, not because of his or her own worth, but because of discrimination forbidden by Title VII. *Hecht, supra,* at 312. Put another way, although a law firm is undoubtedly free to make complex, subjective judgments as to how impressive an applicant is, it is not free to inject into the selection process the *a priori* assumption that, as a whole, women are less acceptable professionally than men."

*See also Martinez v. Bechtel Corp., supra; Blank v. Sullivan & Cromwell,* 418 F.Supp. 1, 10 E.P.D. paragraph 10,364 (S.D.N.Y. 1975); *Gilinsky v. Columbia University,* 62 F.R.D. 178 (S.D.N.Y.1974). *Cf. Senter v. General Motors Corp., supra,* 12 F.E.P. Cases at 460–461.

The plaintiff class, therefore, may include women faculty members discriminated against in other academic departments as well as the Anthropology Department, and in other employment decisions as well as awards of tenure. The questions remain, however, whether the class may also include future women faculty members and applicants; past faculty members and applicants; and past potential applicants, who might have applied absent the defendants' alleged discrimination.

The courts utilizing the across the board approach have almost uniformly permitted the class to include both future [8] and past employees and applicants for employment. *See, e. g., Wetzel v. Liberty Mutual Insurance Co., supra; Martinez v. Bechtel Corp., supra; Rosario v. New York Times Co., supra; Gilinsky v. Columbia University, supra; Kohn v. Royall, Koegel & Wells, supra.* There is some uncertainty, however, as to how far back into the past the class should be permitted to extend. The plaintiff argues that the class should include all women faculty employed or potentially employed at Brown as of March 24, 1972, the date on which Title VII became applicable to institutions of higher learning. Equal Employment Act of 1972, P.L. 92–261, 86 Stat. 103. Under § 706(e) of the Act, 42 U.S.C. § 2000e–5(e), however, Title VII's statute of limitations, charging parties must file charges with the Equal Employment Opportunity Commission within 300 days of the alleged unfair employment practice where, like the plaintiff, here, they have as required by the Act first brought such charges before a state analog of the E.E.O.C.[9] This requirement has been deemed a jurisdictional prerequisite to court action under Title VII. *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App. D.C. 69, 478 F.2d 979, 986 (1973). While a plaintiff may bring a class action on behalf of those who have not filed charges with the E.E.O.C., since his or her action tolls the statute of limitations for all members of the class, *see Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 246, this court agrees with *Wetzel* and similar decisions that have held that such plaintiffs cannot

---

**8.** In one case, *Piva v. Xerox Corp., supra,* the Court held that future employees could be included in the plaintiff class but could not be counted in satisfaction of the numerosity requirement of Rule 23(a)(1). This question is not reached in the instant case because the 100 women faculty members alleged to be currently or in the recent past employed at Brown are alone sufficient to satisfy the numerosity requirement.

**9.** Plaintiff filed her original charge of discrimination with the Rhode Island Commission on Human Rights on November 29, 1974. She

filed her charge with the District Office of the E.E.O.C. on November 21, 1974. Although plaintiff's charge before the Human Rights Commission was thus technically filed after her E.E.O.C. charge, courts have deemed such charges "initially instituted" before the state agency. *Ashworth v. Eastern Airlines, Inc.,* 389 F.Supp. 597, 601 (E.D.Va.1975); *Payne v. Ford Motor Co.,* 334 F.Supp. 172, 176 (E.D.Mo. 1972), rev'd on other grounds, 461 F.2d 1107 (8th Cir.). *See Love v. Pullman Co.,* 404 U.S. 522, 525, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

represent those who could not have filed a charge with the E.E.O.C. at the time plaintiffs filed their charges. *E. g., Martinez v. Bechtel Corp., supra; Rosario v. New York Times Co., supra. But see Kohn v. Royall, Koegel & Wells, supra,* 59 F.R.D. at 518.

The plaintiff asserts, however, that the defendants have conspired to "cover up" evidence of their discriminatory employment policies. Such a cover-up, she contends, makes otherwise time-barred class claims timely, both because the defendants' actions thus become continuing violations, *see Evans v. United Airlines,* 534 F.2d 1247, 12 F.E.P. Cases 1105 (7th Cir. 1976), and because older class members could not have known of the defendants' discriminatory policies at the time their claims would otherwise have been timely. *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975). The defendants contend in response that the plaintiff's allegation of a cover-up turns on nothing more than the fact that the University keeps its personnel files confidential. Once again, however, the defendants' argument addresses the merits of the plaintiff's claim and cannot be given much weight for purposes of class certification. If at the hearing on the merits, the plaintiff is unable to prove the existence of a cover-up, class members whose last connection with Brown antedated by more than 300 days the date on which the plaintiff filed her charges with the E.E.O.C. will not be entitled to any relief.

■ The plaintiff seeks to represent not only women who were faculty members or applicants for faculty positions at Brown in the past, but also women who never even applied for faculty positions at Brown because they were deterred by the discrimination allegedly practiced by the defendants. The plaintiff has cited no cases, however, where such a class has been certified, and the one court that has addressed the question in a Title VII action refused to certify a class that included persons who never actually applied for employment with the defendant. *E. E. O. C. v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975), *pet. for cert. filed,* 44 U.S.L.W. 3214. More important for this court's purposes is the First Circuit's decision in *Jackson v. Dukakis,* 526 F.2d 64 (1st Cir. 1975). There, the court held that the plaintiff, who had never applied for employment with any of the defendant state agencies because he did not want to subject himself to the racial discrimination they allegedly practiced, had suffered no injury in fact and therefore had no standing to sue either on his own behalf or on behalf of the class he purported to represent. Although *Jackson* was decided under 42 U.S.C. §§ 1981, 1983, the court's reasoning on this point seems equally applicable to Title VII, and I find *Jackson* controlling here. Thus, the plaintiff's class may not include women who might have applied for academic positions at Brown but were deterred from doing so by the defendants' alleged discrimination.

## D. Fair and Adequate Representation

■ It is the defendants' position that even if the plaintiff has satisfied the numerosity, commonality, and typicality requirements of Rule 23(a) through the use of the across the board approach, her motion for class certification must still be denied because she cannot fairly and adequately protect the interests of the class. Adequate representation under Rule 23(a)(4) depends on two factors: the plaintiff's attorney must be qualified to conduct the proposed litigation, and the plaintiff must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 247. The defendants do not question the high level of competency of the plaintiff's counsel, which has been evident throughout these proceedings, but they do contend that the plaintiff's prayer that she be awarded tenure in the Anthropology Department places her in a position directly adverse to that of other class members.

The defendants point out that Brown, like many other universities, is currently operating under intense economic pressures and, as a result, the number of available tenured faculty positions is strictly limited. They argue that there is now only one

tenured slot open in the Anthropology Department, with the next one not expected to become available for at least several years. If Ms. Lamphere were awarded tenure, defendants maintain, the opportunities for promotion for other nontenured women in Brown's Anthropology Department would be seriously diminished.[10] Thus, the plaintiff's interest in obtaining a tenured position conflicts with that same interest of other members of the proposed class, making Ms. Lamphere an inadequate representative of the class' interests.

In response, the plaintiff questions the defendants' conclusion that the number of tenured positions in the Anthropology Department is fixed and asserts that tenured positions can be created or dissolved as the administration deems fit.[11] Moreover, the plaintiff asserts that, even assuming *arguendo* that the number of tenured positions is immutably fixed and that members of the proposed class are competing against each other for such positions, this does not constitute a conflict of interest fatal to the class the plaintiff has proposed and seeks to represent.

■■ There is ample authority in support of the plaintiff's position. Professors Wright and Miller note that "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7 Wright & Miller, *supra*, § 1768 at 639. The heart of the plaintiff's claim in this case is that the defendants have discriminated against the entire plaintiff class in employment decisions on the basis of sex. There is no conflict of interest among class members regarding this central issue, and presumably all class members would benefit from the elimination of such discrimination. The potential conflict troubling the defendants can arise only at the remedy stage of litigation, and only if the basic question of the

defendants' liability is first resolved in the plaintiffs' favor. There is no reason why the plaintiff cannot fairly and adequately represent the interests of her proposed class up to the remedy stage of this case. If the potential conflict between Ms. Lamphere and other anthropologists in the class should materialize when and if remedy proceedings are reached in this case, Rule 23 gives this court sufficient flexibility to take appropriate corrective measures at that time.

This approach is not novel and has been utilized by numerous courts in similar situations. In *Berman v. Narragansett Racing Association*, 414 F.2d 311 (1st Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681, for example, the First Circuit held that class actions of purse winners against racetracks and owners could be maintained, even though there was a potential conflict among the class members regarding distribution of the alleged winnings:

> "The interests of the plaintiffs, *vis a vis* the matter in controversy, are 'common and undivided' and the fact that their interests are separable among themselves is immaterial."

*Id.* at 316.

In factual contexts more closely related to the present case, several courts in Title VII actions have found possible conflicts between present employees and former employees seeking reinstatement, or between employees with high seniority and others seeking to merge seniority lists, or among a large number of class members seeking promotions to a smaller number of management level positions, insufficient to defeat maintenance of class actions. *E. g., Rodriquez v. East Texas Motor Freight, supra; Dickerson v. United States Steel Corp.*, 64 F.R.D. 351 (E.D.Pa.1974); *Leisner v. New*

---

**10.** There is presently one female junior member of the Department who is soon to be considered for tenure, and there are two other female members of the Department who will probably be considered for tenure in several years. The plaintiff's proposed class also includes women anthropologists currently employed elsewhere who may soon seek tenured faculty positions at Brown.

**11.** The evidence presently before the Court on this point is in dispute, but for reasons stated above in the text, this factual dispute need not be resolved at this stage of the proceedings.

*York Telephone Co., supra.* In a case directly on point, *Gilinsky v. Columbia University, supra,* a district court held that a professor of psychology who was seeking "senior rank" at Columbia University could adequately represent a class of women denied faculty positions at Columbia because of their sex. As the court noted, "Rule 23(a)(4) does not require a named plaintiff to forego her individual claims." 62 F.R.D. at 180–181.

The defendants rely heavily on *Air Line Stewards & Stewardesses Assoc. v. American Airlines, Inc.,* 490 F.2d 636 (7th Cir. 1973). In that case, the court reversed a district court's approval of the settlement of a Title VII class action and ruled that the plaintiff union, which was controlled by currently employed stewardesses, had interests that were antagonistic to class members who had been discharged and were seeking reinstatement. A critical fact in that case, however, was that the discriminatory employment practice being challenged, the permanent discharge of stewardesses who became pregnant, had previously been prospectively eliminated through collective bargaining agreements. Thus, the "very subject matter of the litigation" was completely moot for the class representatives, all currently employed stewardesses, and they not surprisingly were found inadequate representatives of the interests of discharged class members for purposes of negotiating a settlement agreement that addressed questions of appropriate remedies for the discrimination suffered by the class. The present case is entirely different. Far from being moot for the representative plaintiff, the basic subject matter of the suit is equally vital both for her and the proposed class, and any potential conflicts that may emerge in the remedy stage are still far off and can be adequately handled when and if they arise.

12. "(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*　　\*　　\*　　\*　　\*　　\*

### E. Rule 23(b)(2)

■ I conclude, therefore, that the plaintiff has satisfied all the prerequisites for maintaining a class action outlined in Rule 23(a). The plaintiff must also demonstrate, of course, that the proposed action falls into one of the three types described in Rule 23(b). She argues that her action satisfies the requirement of Rule 23(b)(2).[12] The defendants do not contest plaintiff's characterization of her suit as a 23(b)(2) action; their objections to certification focus exclusively on the requirements of Rule 23(a). Title VII actions seeking injunctive relief and back pay have been held to be particularly suitable for certification under Rule 23(b)(2), and this court agrees with and adopts the position of those courts. *See, e. g., Rich v. Martin Marietta Corp., supra; Wetzel v. Liberty Mutual Insurance Co., supra; Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (5th Cir. 1974).

### ORDER

For the foregoing reasons, I conclude that the requirements of Rule 23 have been satisfied, and it is hereby ordered that the plaintiff's motion for class certification is granted, and that the class so certified shall be defined as follows:

All women who have been employed in faculty positions by Brown University at any time after March 24, 1972, or who have applied for but were denied employment by Brown in such positions after said date; all women who are now so employed; all women who may in the future be so employed or who may in the future apply for but be denied such employment, and which groups of women have been, are being, or may in the future be, discriminated against on the basis of their sex by defendant's practices with respect to hiring, contract renewal, promotion, and tenure.

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."