Homero F. LEITE

v.

CITY OF PROVIDENCE, by and through its Treasurer Donald E. McKiernan and John Does numbered one through five, Individually and in their capacities as officers of the Providence Police Department, whose names are presently unknown to the Plaintiff.

Civ. A. No. 78–320.

United States District Court,
D. Rhode Island.

Dec. 21, 1978.

Gerald McG. DeCelles, Providence, R. I., for plaintiff.

Joseph F. Penza, Jr., Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

The plaintiff Homero Leite alleges that five Providence policemen verbally and physically abused and mistreated him. Leite brings the present action pursuant to numerous federal civil rights statutes, relying primarily upon 42 U.S.C. § 1983 and asserting a cause of action under various constitutional amendments as they are incorporated into the fourteenth amendment with jurisdiction under 28 U.S.C. § 1331.[1] The complaint names the five unknown officers, in their official and individual capacities, and the City of Providence; the complaint solely seeks monetary damages. The City of Providence has filed a motion to dismiss and primarily depends upon the inability to sue a municipality under section 1983. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The plaintiff vigorously opposes the City's motion and cites *Monell et al. v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the recent United States Supreme Court case that modified *Monroe v. Pape* and allowed some section 1983 claims to be brought against a municipality.

In deciding this motion to dismiss, it is necessary to examine the effect of *Monell* upon the body of precedent spawned by *Monroe v. Pape.* Essentially this Court must begin to define, in the wake of *Monell,* the contours of municipal immunity and pendent jurisdiction under section 1983.

The ramifications of *Monell* are significant. The decision reconsidered the legislative history of section 1983 and overruled that portion of *Monroe v. Pape* holding that municipalities are not "persons" in the context of section 1983. The Court held that local governments can be sued directly under section 1983 for allegedly unconstitutional acts that are the result of implementing or executing an officially sanctioned policy, ordinance, regulation, or custom. The action sued upon must be taken "pursuant to official municipal policy"; the liability cannot be based solely upon a respondeat superior theory.

■ The plaintiff in this case first argues that he need not rely upon section 1983 or the *Monell* decision because he asserts a claim based directly upon the fourteenth amendment with jurisdiction grounded in 28 U.S.C. § 1331. Leite cites this Court's decision in *Panzarella v. Boyle,* 406 F.Supp. 787, 794–97 (D.R.I.1975) as authority for this proposition. There has been much doctrinal change since *Panzarella,* however, and its reasoning has been undermined considerably. The First Circuit refuses to imply a cause of action under the fourteenth amendment for monetary damages against a municipality. *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977). And this Court has followed suit. *Lembo v. Rossi, et al.* (C.A. # 75–240) (unreported mem. op. 12/20/77). The First Circuit's *Kostka* decision did draw support from the fact that *Monroe v. Pape* prohibited all section 1983 claims against a municipality. The *Monell* decision, therefore, might alter the *Kostka* reasoning, but not its result. Because Congress did provide an adequate remedy under the reinterpreted section 1983, there is little reason to imply a constitutional cause of action against municipalities by analogy to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In his *Monell* concurrence, Justice

---

1. The complaint also asserts causes of action under 42 U.S.C. §§ 1981, 1985, 1986 and 1988. The section 1988 claim is quickly dismissed on the authority of *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Plaintiff has not pressed the other asserted causes of action in opposing this motion to dismiss. Due to the decision in this case and the complete lack of any argument on these supplementary claims, there is little reason to decide whether plaintiff states a cause of action against the municipality under the above cited statutes. The reasons that plaintiff fails to state a claim against the City of Providence under section 1983 appear to apply to his section 1981 and 1985 claims with equal force.

Powell specifically mentioned that little reason now existed for resorting to a *Bivens* -type cause of action and concluded that "rather than constitutionalize a cause of action against local government that Congress intended to create in 1871, the better course is to confess error and set the record straight, as the Court does today". *Monell, supra* 436 U.S. at 713, 98 S.Ct. at 2047. Under *Monell*, Leite should not premise a cause of action against a municipality directly upon the fourteenth amendment; rather, he should assert a claim under section 1983.

■ Leite has asserted a section 1983 claim recognizable under *Monell*. Although Leite's complaint is largely phrased in terms of a respondeat superior claim, he does assert that "the City of Providence is liable to your petitioner in that it was negligent in hiring, training, continuing to employ and/or failing to discipline and/or supervise its employees . . ." Such a claim asserts that official municipal policy was one of the direct causes of the alleged harm. Therefore, the City of Providence is not being sued solely on the basis of a respondeat superior theory.

■ Because *Monell* makes the City a proper party to this sort of section 1983 action, the Court must consider whether the City is immune to suit due to the complaint's failure to allege a lack of "good faith" or a sufficient degree of culpability. In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court detailed the "good faith" defense available to state officials sued under section 1983. There is no reason to assume that the "official" or "good faith" immunity should not be extended to municipalities. Although *Wood* was specifically concerned with the good faith discretion of state officials, the same basic concerns that promoted the limited official immunity under section 1983 also recommend an equally limited municipal immunity or "good faith" defense

under section 1983 for cities. As with official immunity, this good faith defense protects a municipality's exercise of discretion and promotes "the decisiveness and judgment required by the public good". *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1973). As the Supreme Court stated in *Scheuer,* both official and municipal immunity spring "from the same root considerations". *Id.* at 239, 94 S.Ct. 1683. *See also* Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1 (1963).

■ The good faith defense is composed of both objective and subjective standards. An officer is only entitled to this defense if his conduct is motivated by "permissible intentions"; however, an officer's subjective intentions do not invoke the good faith defense if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate" a person's "clearly established constitutional rights". *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. 992. The good faith defense was developed in those situations where the officials entered into an intentional course of action with "permissible intentions". *See, e. g., Wood v. Strickland, supra,* (intentional expulsion of students); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (intentional arrest made in good faith with probable cause). For the sake of analytical clarity, the good faith doctrine of *Wood v. Strickland* is best applied in those situations where the official acts with a purposeful intention; that is, in those situations where the official had an intention which the Court can inspect and determine its "permissibility". *See* Developments, Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1205 (1977).

This case, however, involves a municipality which, in its supervisory capacity, was allegedly negligent. Traditional "good faith defense" analysis is not particularly helpful in these circumstances;[2] instead,

---

**2.** Many acts of negligence are not done with an intent whose "permissibility" can be fairly measured under the traditional *Wood* analysis. In the context of negligence actions, many

courts have imposed a required level of culpability before imposing section 1983 liability. *See, e. g., Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976) (en banc). Like the "good faith

the Court must determine whether or not the municipality's alleged conduct rises to a level of culpability sufficient to state a claim under section 1983.

The question of whether negligence gives rise to a section 1983 action is hardly novel. Various federal courts have considered the question and reached varying results.[3] The United States Supreme Court has yet to decide the issue of whether section 1983 affords "a remedy for negligent deprivation of constitutional rights". *Procunier v. Navarette,* 434 U.S. 555, 566 n.14, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978).

The statutory language and history of section 1983 provides no clue as to whether officials with supervisory or training responsibilities should be liable on a theory of negligence. The broad language of section 1983—which provides for liability for any person "causing" a constitutional deprivation—is certainly broad enough to include negligent deprivations, particularly in light of *Monroe v. Pape's* declaration that 1983 liability should be determined by reference to "the background of tort liability that makes a man responsible for the natural consequences of his actions". 365 U.S. at 187, 81 S.Ct. at 484. Despite the statute's potential sweep, numerous courts have limited section 1983 so as not to reach instances of isolated negligent misconduct. *See, e. g., Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976) (en banc); *Parker v. McKeithen,* 488 F.2d 553 (5th Cir.) *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974). In

the past, this Court has followed the majority view and stated that "mere negligence" is not sufficient to invoke section 1983 liability. *Naughton v. Bevilacqua,* 458 F.Supp. 610 (D.R.I. 1978).

■ In light of *Monell,* this Court now examines the degree of culpability a municipality must exhibit in order to be liable under section 1983. It is elementary that a municipality can only act through its high level, supervisory officials. Thus, although a municipality cannot be held liable under section 1983 on the theory of respondeat superior, it may be held liable if it acts "directly" through those officials who set and supervise municipal policy. In this case, City officials did set the policies involved in hiring, training and supervising the police force and allegedly were negligent in structuring or enforcing these policies. Because a municipality acts through its high level officials and occupies a supervisory position, this Court may determine the scope of municipal liability by relying upon those precedents which discuss the degree of culpability required under section 1983 by one in a supervisory position.

■ The vast majority of those courts which have considered the issue have not held high level officials liable for failing to supervise, correct and control the actions of their subordinates. As one court stated:

> Public officials cannot be held liable for monetary damages under 1983 purely for an alleged failure to exercise proper supervisory control over their subordinates.

---

defense", this culpability standard concerns the defendant's state of mind and assures that supervisory officials or municipalities will not be unduly impeded or circumscribed in performing their official duties.

**3.** *See, e. g., Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (negligent failure to train or supervise police force actionable under section 1983); *Santiago v. City of Philadelphia,* 435 F.Supp. 136 (E.D.Pa.1977) (negligence states a claim under section 1983 "unless the specific constitutional violation alleged requires a greater degree of culpability"); *Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976) (en banc) (simple negligence not actionable); *Parker v. McKeithen,*

488 F.2d 553 (5th Cir.) *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974) ("isolated incident of negligence" not sufficient but "gross negligence" is actionable); *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974) (negligence not actionable); *Howell v. Cataldi,* 464 F.2d 272 (3rd Cir. 1972) (same); *Naughton v. Bevilacqua,* 458 F.Supp. 610 (D.R.I. 1978). The First Circuit has not specifically addressed the issue. However, in the context of an alleged Eighth Amendment violation brought in a section 1983 action, the Court stated that "mere negligence, in the absence of conduct which shocks the conscience, in giving or failing to supply medical treatment to prisoners will not suffice". *Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973).

Many cases, in the specific context of alleged abuse of police power, have held offending officers themselves liable, while dismissing complaints against superiors who had no personal involvement in the alleged misconduct.

*Delaney v. Dias,* 415 F.Supp. 1351, 1353 (D.Mass.1976); see cases cited therein. *See also Ford v. Byrd,* 544 F.2d 194 (5th Cir. 1976); *Parker v. McKeithen, supra.* But see *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

Instead of simply a negligent failure to supervise, the supervising official must have participated in some way in the alleged constitutional deprivation or acted in such a way as to exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights. Two recent Supreme Court decisions, although not precisely on point, substantially support this interpretation of section 1983.

In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court denied injunctive relief under section 1983 because the plaintiffs had failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct". 423 U.S. at 371, 96 S.Ct. at 604. Courts have adopted this standard in section 1983 suits that claim monetary damages. *See, e. g., Delaney v. Dias, supra* at 1354 ("defendant had some contact with the events at issue, either through direct knowledge of the abuses, or through some explicit or implicit policy which encouraged disregard for constitutional rights"). *Rizzo* and its progeny do not find a negligent failure to supervise actionable under section 1983 unless the supervisory officials in some way directly participated in or encouraged the specific instance of misconduct; at a minimum, this standard requires a showing that the municipality, acting through its supervisory officials, implicitly authorized or approved or acquiesced in the misconduct.

*Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), also provides some guidance on the degree of culpability required under section 1983. *Estelle* involved a 1983 suit alleging a violation of the eighth amendment. At least in the context of the eighth amendment, a negligent act or failure to act was not sufficient, in itself, to state a section 1983 cause of action; instead, the plaintiff must show that the state officials acted with "deliberate indifference" to the probable constitutional violation. *See also Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973). This standard of "deliberate indifference" is in accord with lower federal courts that hold "wanton", "reckless", or "grossly negligent" conduct by state officials actionable under section 1983. *See, e. g., Russ v. Ratliff,* 538 F.2d 799 (8th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Parker v. McKeithen, supra. Estelle's* "deliberate indifference" and *Rizzo's* "authorization or approval" standards are also satisfied when a supervisory official failed to act or acted inadequately when he had actual or imputed knowledge of a past pattern of police misconduct or knowledge of well-known, isolated incidents of police misconduct. *See Parker v. McKeithen, supra; Sims v. Adams,* 537 F.2d 829, 831–32 (5th Cir. 1976); *Delaney v. Dias, supra; Moon v. Winfield,* 383 F.Supp. 31 (N.D.Ill.1974). *Cf. Rizzo v. Goode, supra.*

■ Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a "pattern" of past police misconduct before they can sue the city under section 1983. If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility, authority, and force that po-

lice normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct. *Cf. Delaney v. Dias, supra* at 1354; *Perry v. Elrod,* 436 F.Supp. 299 (N.D.Ill. 1977) (implied acquiescence sufficient for section 1983 liability).

Oversights in the training process or simple negligence in some of the training procedures will not give rise to section 1983 liability; instead, the training must be nonexistent or reckless, or grossly, palpably, and culpably negligent. The plaintiff in this case does not allege the requisite intentional conduct, or recklessness, or gross negligence necessary to state a claim against a municipality under section 1983. Aside from plaintiff's respondeat superior claims, he only alleges that the city was negligent in its training and hiring of the police force. Such allegations of simple negligence do not state a claim under section 1983. To distinguish between negligence and "gross negligence" is not to indulge in technicalities. There is a clear and significant difference between these two standards; one requires only a showing of unreasonableness while the other demands evidence of near recklessness or shockingly unjustified and unreasonable action. Because the plaintiff has only alleged negligence, his section 1983 claim against the City of Providence fails to state a claim upon which relief can be granted and must be dismissed.

The Court recognizes that the degree of culpability required before a municipality can be sued under section 1983 is a novel question. In fairness to the litigants, the Court dismisses plaintiff's claims against the City without prejudice and gives plaintiff leave to amend his pleadings within thirty days. If such an amendment is undertaken, it must, of course, be done with utmost care and analysis of the facts.

The plaintiff also requests that this Court take jurisdiction over the respondeat superior claims against the City that are based upon state law. Because this Court has dismissed the federal claims against the municipality, there is no longer an independent basis of federal jurisdiction over the City of Providence. Therefore, this Court can hear the state-law claims only if it can properly exercise ancillary jurisdiction over the City. In order to invoke this Court's ancillary jurisdiction, plaintiff must overcome a substantial precedential roadblock. *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), a Supreme Court case pre-dating *Monell,* held that a federal court trying a section 1983 action could not take jurisdiction over a municipality that would not otherwise be subject to the Court's jurisdiction. The effect of *Monell* upon the *Aldinger* precedent is a difficult and unanswered question. Reaching this issue is presently unnecessary because the possible amendment of the pleadings may remove the issue of ancillary jurisdiction by making the City of Providence a proper party to the section 1983 suit.