**Ernest J. FORAND, Jr., Plaintiff,**

v.

**William O'BRIEN, Jr., et al, Defendants.**

**Civ. A. No. 84–994–C.**

United States District Court, D. Massachusetts.

Feb. 12, 1985.

Stephen E. Schoepfer, Boston, Mass., for plaintiff.

Edward P. Reardon, Reardon & Reardon, Worcester, Mass., for defendant W.H. O'Brien, Jr.

Orlando F. de Abreu, City Sol., Taunton, Mass., for defendants Renaud and City of Taunton.

Talbot T. Tweedy, Taunton, Mass., for defendant Roger J. Renaud, Jr.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by the administrator of the estate of Ernest J. Forand, Jr., pursuant to 42 U.S.C. § 1983. The defendants are William H. O'Brien ("O'Brien"), a Taunton Police Officer, Roger J. Renaud, Jr. ("Renaud"), Taunton Chief of Police, and the City of Taunton ("City"). The plaintiff alleges, *inter alia,* that Ernest J. Forand, Jr. was shot and killed by Officer O'Brien, thereby depriving him of rights protected by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution. Plaintiff further alleges that Renaud and the City are liable under § 1983 by reason of their recklessness and gross negligence in failing to provide adequate training to police officers under their control and supervision, and their adoption of an "official policy or custom of condoning and acquiescing in acts of unlawful violence ... depriving citizens of their constitutional rights...." The complaint also sets forth pendent state law tort claims against the three defendants. The matter is now before the Court on defendants' motions for summary judgment.

The facts set forth in the complaint are as follows. Officer O'Brien, on duty as a Taunton Police Officer was summoned by radio to the Taunton Eagles Soccer club ("Soccer Club") at approximately 2:24 a.m. on the morning of August 18, 1982. Upon arrival at the Soccer Club, O'Brien was

directed to the rear of the Soccer Club by another Police Officer. O'Brien illuminated the rear door of the Soccer Club with his flashlight, drew his revolver, saw Forand and then deliberately shot him. The bullet struck Forand in the front of his neck, pierced his right lung, and exited from his back, causing fatal injuries.

In support of his motion, defendant O'Brien has submitted an affidavit which relates the facts somewhat differently than plaintiff's version. O'Brien states that he was notified of a breaking and entering in progress at the Soccer Club, and that he immediately proceeded to that location. Upon arrival Officer Curran told him to watch the rear of the Soccer Club because Curran believed that suspects were still inside the building. While in position at the rear of the Soccer Club, O'Brien heard the sound of a door opening. He illuminated the doorway with his flashlight and observed a white male just inside the door, which was slightly ajar. Not knowing whether this person was armed, O'Brien unholstered his revolver, keeping it at his side. The door then flew open, the person pushed O'Brien back and ran off. O'Brien saw that this person was unarmed and attempted to holster his revolver as he pursued him. While running, O'Brien stumbled and began to fall forward. Instinctively, he reached forward with both hands to break the fall. The revolver, still in O'Brien's left hand, discharged.

In opposition to the motions for summary judgment, the plaintiff has submitted several affidavits. Those portions of the affidavits which satisfy the personal knowledge requirement of Rule 56 are as follows. George Katsas, M.D., states that he performed an autopsy on the body of Ernest J. Forand, Jr., and determined that the cause of death was a gunshot wound which *entered* the body in the front of the neck and *exited* through the back. These findings are corroborated by the affidavit of William Duke, a State Police Officer specially trained in the analysis of gunshot wounds. James T. McGuiness, a Massachusetts State Police Officer who investigated the shooting, states in his affidavit

that he observed Officer O'Brien after the shooting, and that there were no dirt or scuffs on O'Brien's uniform or hands at that time. He further states that the area where O'Brien allegedly fell is lower than the area where Forand was shot (and where blood was found). McGuiness also states that the revolver carried by O'Brien cannot be discharged without the application of force to the trigger.

Summary judgment is appropriate where there "is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56. When deciding a motion for summary judgment a court should draw all inferences from the record favorably to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Because of the different legal issues involved, it is useful to consider defendant O'Brien's motion separately from the motions of Chief Renaud and the City of Taunton.

## DEFENDANT O'BRIEN

█ The affidavits submitted by the plaintiff state facts from which inferences favorable to the plaintiff may be drawn. The absence of scuff marks on O'Brien's shoes or uniform may raise an inference that he did not stumble and fall. The location of the entrance and exit wounds in Forand's body casts further doubt upon O'Brien's version of the incident, as does the description of the topography of the area and the statement that O'Brien's firearm could not discharge without pressure to the trigger. The cumulative effect of plaintiff's affidavits is to create a substantial question of fact as to whether Ernest Forand was shot accidentally or intentionally. I rule that there is a genuine issue of material fact which precludes a grant of summary judgment for defendant O'Brien. Because of this issue of fact, it is unnecessary to reach the question of whether a negligent shooting under these circumstances would be a constitutional deprivation cognizable under § 1983.

## DEFENDANTS RENAUD AND CITY OF TAUNTON

 That portion of the case which concerns Chief Renaud and the City necessitates inquiry into the extent of supervisory liability under § 1983. There is no *respondeat superior* liability under § 1983: "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell v. New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). However, where a constitutional injury is inflicted by an employee pursuant to "a government's policy or custom" the governmental entity is responsible. *Id.* at 694, 98 S.Ct. at 2037. In other words, unless the municipality in some way causes its employee to violate the plaintiff's constitutional rights, no recovery may be had under § 1983. *Id.* at 692, 98 S.Ct. at 2036.

The circumstances of this case present a question as to the type of acts or omissions necessary to provide the requisite causal link between the municipality and the injury. The plaintiff argues two theories: (1) that Renaud and the City were grossly negligent in failing to provide adequate training, and (2) that Renaud and the City had adopted an official policy or custom of condoning and acquiescing in unconstitutional acts of violence.

Plaintiff's "gross negligence" theory relies on a line of cases beginning with *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978). *Accord Popow v. City or Margate*, 476 F.Supp. 1237 (D.N.J.1979); *Tuttle v. City of Oklahoma*, 728 F.2d 456 (10th Cir.1984). In *Leite*, the plaintiff alleged that five unidentified Providence, Rhode Island police officers verbally and physically assaulted him, and that the City of Providence was "negligent in hiring, training, continuing to employee and/or failing to discipline and/or supervise its employees." 463 F.Supp. at 588. The *Leite* court acknowledged that mere negligence by supervisory officials would not support § 1983 liability, and that the prevailing view was that a plaintiff must prove "the adoption of [some] plan or policy by [the municipality]—express or otherwise—

showing their authorization or approval of such misconduct." *Id.* at 590, *citing Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). *See also Delaney v. Dias*, 415 F.Supp. 1351, 1354 (D.Mass. 1976). The court then followed its analysis one step further, saying that citizens need not endure a "pattern" of past police misconduct before a § 1983 action can be brought:

"If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a deliberate indifference to the resulting violations of a citizens constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations."

*Id.*

*Leite* has, however, been criticized as an unwarranted expansion of municipal liability. *Gilmere v. City of Atlanta*, 737 F.2d 894, 904 (11th Cir.1984), *Edmunds v. Dillin*, 485 F.Supp. 722, 727 (N.D. Ohio 1980). In *Gilmere*, the Court of Appeals for the eleventh circuit refused to accept the "gross negligence" or "deliberate indifference" standard, preferring a narrow interpretation of the "policy or custom" rule developed in *Monell*. The *Gilmere* court went on to say that the "deliberate indifference" language used in *Leite* described the standard for Eighth Amendment violations only and was inappropriately applied to a due process claim by the *Leite* court. *Id.* at 904; *c.f. Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court of Appeals concluded that occasional acts of untrained policemen are not policy or custom within the contemplation of *Monell. Id.* at 904.

The Court of Appeals for the First Circuit has not spoken directly to this issue. However, in a recent case involving the question of a police chief's liability under § 1983, the Court reviewed the *Leite* standard and remarked: "We do not think that the standard of liability of a prison official (reckless or callous indifference) can be

applied writ large to other state officials."
*Gero v. Henault,* 740 F.2d 78 (1st Cir.1984).

The plaintiff's second theory for imposing liability upon the City of Taunton turns principally upon a question of fact, i.e. whether the City has acquiesced in, or condoned prior acts of violence by its officers. In support of their motions for summary judgment, the various defendants have submitted deposition materials which purport to show that there have been no police shootings in Taunton since 1952, and that the City Clerk has searched the City records from 1979 to present and found no indication of any relevant civil litigation pending against the City.

The plaintiff, on the other hand, has submitted deposition materials which indicate that there have been complaints of excessive force against Taunton officers, and that a citizen attempted to obtain a criminal complaint against Officer O'Brien in the States District Court.

These facts, although of questionable probative value in this context, do raise an inference concerning the adequacy of the investigative and disciplinary policies of the police department. Furthermore, I note that the materials submitted by the defendants fall short of that which would be required to rebut the plaintiff's allegations. Not all unconstitutional acts of violence involve shootings, nor do they necessarily result in litigation. Therefore, I rule that the defendants have not met their burden to prove that there is no genuine issue of material fact regarding the City's alleged policy of condoning or acquiescing in unconstitutional acts of violence.

In light of this ruling, and in the interest of judicial economy, I decline to grant summary judgment on that portion of plaintiff's claim which deals with "gross negligence" and "deliberate indifference" in failure to train. Because the governing law is unsettled in the First Circuit, it is preferable to let the jury evaluate the evidence supporting this theory along with the rest of the case.

This does not, however, imply any conclusion that the facts alleged by the plaintiff meet even the *Leite* standard. Rather, the Court recognizes that questions of negligence and/or gross negligence are generally not suitable for disposition on summary judgment. 6 J. Moore & J. Wilker, Moore's Federal Practice ¶ 56.17[42]. Therefore, defendants Renaud and City of Taunton's motions should be denied.

Order accordingly.