DECISION
The facts upon which the plaintiff's motions are predicated may be summarized as follows:
The plaintiff, Heidi Zacher Boyle, brought an action for damages in the Superior Court against the Town of Bristol, Michael McGreevy ("McGreevy"), Stephen Annarumo ("Annarumo") and Joseph Diniz ("Diniz") (collectively, the "defendants"), alleging negligence and excessive force. On November 13, 1993, the plaintiff and her then boyfriend, Keith Boyle, were patrons at The Clubhouse in Bristol. Keith Boyle, a musician, was performing with his band that evening. While on stage, Mr. Boyle picked up a large amplifier and threw it into the audience. A fight ensued between Mr. Boyle and several other patrons. At this time, several of the band members escorted Mr. Boyle out of the bar and onto the porch. Mr. Boyle was intoxicated and very agitated. The plaintiff approached Mr. Boyle in an attempt to calm him down. She testified she tripped and fell to the ground and appeared to be unconscious. The bartender contacted the Bristol Police Department and requested that they escort Mr. Boyle from the premises.
Defendant McGreevy arrived at the scene and proceeded to remove Boyle from The Clubhouse. The plaintiff regained consciousness and attemped to assist Mr. Boyle. At this time, defendant McGreevy sprayed the plaintiff and Mr. Boyle with pepper gas and called for assistance. Defendant McGreevy wrestled the plaintiff to the floor, kneeled on her back and placed her in handcuffs. Defendants Diniz and Annarumo arrived and assisted defendant McGreevy in arresting both the plaintiff and Mr. Boyle. After arriving at the police station, the plaintiff complained of arm pain and was transported to the Newport Hospital emergency room. The plaintiff was treated for contusions and lacerations to the face and a humeral shaft fracture to the arm. The plaintiff claimed that she sustained the fracture as a result of the defendants' negligence and use of excessive force.
On Thursday, September 21, 2000, a Superior Court trial jury found in favor of the plaintiff on her negligence claim against defendant McGreevy. The jury awarded the plaintiff $7,500.00, which included both medical expenses and pain and suffering. On that same date, the trial jury returned verdicts in favor of defendants — Town of Bristol, Annarumo and Diniz — on all claims and in favor of defendant McGreevy on the plaintiff's 42 U.S.C. § 1983 claim.
The plaintiff now moves for an additur of $142,500. or, in the alternative, a new trial on the issue of damages. The plaintiff also moves for a new trial as to the excessive force claims against defendants McGreevy, Annarumo and Diniz, and the negligence claims against defendants Annarumo and Diniz. The plaintiff is seeking sanctions, pursuant to Rule 37(c) of the Superior Court Rules of Civil Procedure, against all defendants for refusing to admit to certain admissions. And, the plaintiff submits a bill for the taxation of costs.
Defendant McGreevy objects to the plaintiff's motion for a new trial as to damages and argues that the jury award was adequate. The defendants — Annarumo, McGreevy and Diniz — object to the plaintiff's motion for a new trial as to the excessive force and negligence claims, contending that the grounds are insufficient to grant a new trial. The defendants object to the plaintiff's motion for sanctions, arguing that the admissions were of no substantial importance, that they had reason to believe that they might prevail on the issues and that the plaintiff did not prove the admissions. The defendants also object to the plaintiff's bill of taxation of costs, contending that the costs are non-recoverable and that the defendants — Town of Bristol, Annarumo and Diniz — should not have to pay costs since they prevailed against the plaintiff. In addition, the Town of Bristol moves for attorney's fees pursuant to 42 U.S.C. § 1988 as the prevailing party in the plaintiff's § 1983 claim.
 A. Motion for New Trial
1. Inadequacy of Damages
A jury's award may be cast aside and a new trial granted only if the award shocks the conscience, strongly suggests that it was affected by passion or demonstrates that the jury calculated the amount of the award upon some clearly erroneous basis. Silva v. Spooner, 692 A.2d 336 (R.I. 1997). We permit the jury substantial latitude in computing damages to be awarded for pain and suffering. See id. Pursuant to Rule 59 of the Superior Court Rules of Civil Procedure, when a trial justice believes that the jury verdict is either grossly excessive or inadequate, he can, before ordering a new trial on the issue of damages, give the plaintiff an opportunity for remittitur or the defendant an additur. 1 Kent R.I. Civil Pract. § 59.4 at 440 (1969). A trial justice may use a remittitur or additur to avoid unnecessary re-litigation of the issues. This way, the trial justice may prevent the burdensome cost, delays and harrassment that may accompany the re-litigation of the same issues.
If a party refuses to accept the reapportionment of damages, in this case an additur, then the trial justice may properly consider granting a motion for a new trial. In ruling on a motion for a new trial as to the adequacy of damages, after weighing the material evidence and passing on the credibility of witnesses, the trial justice should grant a new trial if there is a demonstrable disparity between the award and the damages sustained; so that the verdict is not truly responsive to the merits of the case and fails to do substantial justice between the parties. Kelaghan v. Roberts, 433 A.2d 226, 229 (R.I. 1981).
The plaintiff contends the jury award for pain and suffering in the amount of $3,000. was inadequate and failed to do substantial justice to the parties. The plaintiff requests an additur in the amount of $142,500. The plaintiff argues that she endured extreme pain and suffering as a result of the humeral shaft fracture she received from defendant McGreevy. She mentions that she was confined to a "body jacket" for a four-week period. During that time, the plaintiff claims that she was unable to care for herself and required assistance. She was required to sleep in a prone position and could not use the toilet on her own. The plaintiff states that she still experiences some discomfort from the fracture, even though it has healed. The plaintiff also offers trial testimony of Edward Fink, M.D., an ortopedic surgeon, who states that the humeral shaft is one of the largest bones in the arm and among the most painful fractures. Defendant McGreevy contends that the amount awarded by the jury was adequate and that an additur or new trial is not warranted. The defendant then argues that if the trial justice should give her an opportunity for an additur, the amount requested by the plaintiff is excessive.
The amount sought by the plaintiff is more than twenty times the total jury award.
The plaintiff supports the amount of her additur by citing Kelaghan v. Roberts, 433 A.2d 226 (R.I. 1981) and Richardson v. Pedorella, 694 A.2d 755
(R.I. 1997). In Kelaghan, the plaintiff sustained severe injuries, which included a fractured knee, a fractured hip and pelvis, fractured ribs and head injuries. Furthermore, the plaintiff in Kelaghan was hospitalized for three months, was not able to walk without assistance, and suffered permanent damage preventing her from standing for more than 20 minutes at a time.
Similarly, in Richardson, the plaintiff suffered injuries from an automobile accident. The plaintiff, as a result, developed convulsive syncope, which caused convulsions and loss of consciousness. In each of these cases, the courts ordered an additur in an amount of no more than five times the original jury award.
The evidence presented by the plaintiff, as it relates to her pain and suffering, is compelling. The jury award in the amount of $3,000. for pain and suffering does not appear to be truly responsive to the merits of the case. If the award were allowed to stand, it would fail to do substantial justice between the parties. However, the plaintiff's request for additur in the amount of $142,500. does seem excessive, since the plaintiff was never hospitalized and sustained no permanent damage to her arm. Nevertheless, the plaintiff was confined to a "body jacket" for a month and endured pain and suffering from her injury for which she should be adequately compensated. It would be inappropriate for this court to reasonably justify an additur in an amount 20 times the jury award. Rather, this court believes, after hearing and observing the plaintiff testify, that the pain and suffering she experienced from having her arm broken, the humiliation of having her very basic needs attended to by others, the discomfort she endured while in a body cast for four weeks and the pain she testified she continues to experience, support an additur in the amount of $30,000.00.
2. Issue of Liability as to Excessive Force Claims
In deciding a motion for a new trial, a trial justice sits as a seventh juror and is required to independently weigh, evaluate and assess the credibility of the trial witnesses and the evidence presented. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand. Morrocco v. Piccardi, 716 A.2d 250, 253 (R.I. 1998) (citing Barbato v. Epstein, 196 A.2d 836, 837 (R.I. 1964)). If the trial justice finds that the jury's verdict is against the fair preponderance of the evidence, or fails to do substantial justice between the parties or respond to the merits of the claim, he should set aside the jury's verdict and order a new trial. Zarella v. Robinson, 460 A.2d 412, 417-418 (R.I 1983).
First, the plaintiff contends that the misbehavior and improper conduct of the three defendant police officers during trial disturbed the jurors, resulting in prejudice to the plaintiff and warranting a new trial. The defense argues that the jury was not prejudiced by the misconduct and that the plaintiff's claim is without merit. The record reflects that upon notification to the court by a juror that jurors were disturbed by the defendants' behavior during trial, a voir dire was conducted of all jurors. During the voir dire, all of the jurors stated that the misconduct of the defendants would not affect their decision and that they could remain fair and impartial. After the voir dire, both parties had the option of moving to pass the case. The plaintiff did not move to pass the case and now claims that the misconduct of the defendants prejudiced her. See Bank of the South v. Ft. Lauderdale Tech. College, Inc., 425 F.2d 1374 (D.C. La. 1969) (improper conduct of the defendant in flirting with members of the jury did not require a new trial when plaintiff did not move for mistrial at the time the improper conduct was pointed out at trial, when the jury verdict was supported by the evidence, and it was not proven that the defendant's behavior led to improper influence). It would appear from the plaintiff's actions that she was satisfied with the jurors' voir dire and did not think that she had been prejudiced. Therefore, it would be unfair now to set aside the jury verdict to allow the plaintiff to argue prejudice. Furthermore, the evidence does not show that the plaintiff was unduly prejudiced. The jury found one defendant — McGreevy — negligent, while it found the other two defendants not liable. Therefore, a new trial on the basis of alleged misconduct is denied.
Next, the plaintiff argues that the defendants changed their theory of defense at the last moment, which surprised and prejudiced the plaintiff. Specifically, the plaintiff claims that the defendants' theory, before and during trial, was that the plaintiff sustained her fracture prior to the arrival of the police officers. Then, near the end of the trial, the defendants changed their theory claiming that the plaintiff sustained her injury due to her irrational behavior at the police station. The plaintiff contends that this change came at such a late point in the trial that she was unable to conduct further discovery. The defendants argue that this claim is without merit.
There is no law requiring counsel to maintain his or her theory of the case. It is common practice for counsel to consider several theories when preparing for and during trial. Due to testimony or evidence presented at trial, often counsel may have to change theories to best represent their clients. Therefore, it would be unfair to require counsel to maintain one theory throughout trial. It does not appear that the plaintiff was unduly prejudiced. The jury found that defendant McGreevy was negligent in fracturing plaintiff's arm. Therefore, a new trial on this ground is denied.
Finally, the plaintiff contends that the surprise testimony of witness, Ann Marie Tebano, impeached the credibility of the plaintiff and unduly prejudiced her case. The plaintiff claims that Ms. Tebano testified on direct examination to facts not disclosed in evidence. The defendant argues that Ms. Tebano's testimony did not prejudice the plaintiff and that said claims are insufficient grounds to grant a new trial.
During direct examination, Ms. Tebano testified that she saw the plaintiff's husband strike her. However, this information was not disclosed in Ms. Tebano's unsworn statement to the police on the night of the incident. Even though the testimony was a surprise to both sides, it does not appear to have prejudiced either party. Often, when witnesses testify, they make statements not previously disclosed. The witness is then subject to cross-examination. Cross-examination gives opposing counsel the opportunity to inquire about the new information. If the new information is harmful, cross-examination also gives counsel the chance to impeach the credibility of the witness. The plaintiff had this opportunity. It is also clear that Ms. Tebano's testimony did not undermine the plaintiff's claim since the jury found defendant McGreevy negligent in causing her fractured arm. Therefore, a new trial on this ground is denied.
 B. Motion for Sanctions Pursuant to Rule 37(c)
Pursuant to Rule 37(c) of the Superior Court Rules of Civil Procedure, if a party fails to admit the truth of any matter as required under Rule 36 and if, thereafter, the party requesting the admission proves the genuineness of the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay reasonable expenses incurred in making such proof, including reasonable attorney's fees. Super. R. Civ. P. 37(c). It is in the discretion of the court to make the order unless it finds that:
 (1) the request was held objectionable pursuant to Rule 36(a), or
 (2) the admission sought was of no substantial importance, or
 (3) the party failing to admit had reasonable grounds to believe that the party might prevail on the matter, or
 (4) there was other good reason for failure to admit.
 The purpose of the rule is to avoid the necessity of making evidentiary proof of such proof or genuineness, thus reducing trial time and avoiding the expense. Kent, R.I. Pract. § 36.1 at 294. It is used when the requesting party knows certain facts and believing them not really in dispute wants to be relieved of the burden of proving them.
See id. Powers v. State, WL 936958 (R.I. Super. 1996).
The plaintiff contends that there are five separate admissions pertaining to the causation and timing of her injury that the defendants refused to admit. As a result, the plaintiff maintains that she was forced to incur costs associated with proving the truthfulness and genuineness of the admissions. The defendants argue that they properly denied the admissions. Specifically, the defendants contend that they properly denied Admissions #4 and #7 because they had a reasonable belief that they would prevail on the issues.[1] The third exception under Rule 37(c) does not require that a party prove its case. Russo v. Baxter Healthcare Corp., 51 F.Supp.2d 70, 79 (1999). Rather, all that is required is that the party acted reasonably in believing that he might prevail on the matter. 11 Wright Miller, Federal Practice and Procedure: Civil § 2290 at 712 (1982). In this case, the defendants argue that the plaintiff sustained the fracture because she was violently resisting arrest. Reasonable minds could differ in a determination of who was at fault. Therefore, the defendants could reasonably believe that they would prevail on the issues of negligence and causation as to Admissions #4 and #7.
The defendants next contend that the plaintiff did not prove the truthfulness of Admissions #5, 6 and 8 and that the admissions were of no substantial importance.[2] In order to recover expenses under Rule 37(c), the requesting party must prove the truthfulness of the admission. Wright Miller, Federal Practice and Procedure: Civil § 2290 at 71 (emphasis added). The admissions served on the defendants requested that they admit that the fracture was sustained on November 13, 1993, and that it occurred after the defendants arrived at the scene. In proving the matter, the plaintiff presented medical testimony showing that she suffered a fracture on November 13, 1993. However, the plaintiff's expert witness, Dr. Fink, was unable to pinpoint the exact timing of the fracture. Therefore, the court must look at the evidence and determine if the plaintiff presented sufficient proof.
It is not entirely clear when a court should make a finding of no substantial importance. See id. This exception is appropriate where there is evidence that the amount of time and effort required to prove the matter is trivial. See id.; see also Bateman v. Standard Brands, Inc., 9 F.R.D. 555 (W.D.Mo. 1949). The record suggests that the plaintiff used expert witness testimony and the depositions of the defendant police officers to prove the matters denied in Admissions #5, 6 and 8. The plaintiff seems to contend that this evidence was obtained only to prove the truthfulness of the admissions.
This argument is not persuasive. In a negligence cause of action, the injured party is left with the burden of proving that he or she was injured. This often requires the presentation of medical testimony and evidence. Since the plaintiff already had the burden of presenting medical evidence of her injury, it is highly unlikely that Dr. Fink's services were obtained solely to prove the admissions.
Finally, the defendants argue that the plaintiff's motion should be denied, as stated in Rule 37(c) if "there was other good reason for the failure to admit." The meaning of this exception is undefined in rule or in caselaw and has been left to the interpretation of the courts. Wright Miller, Federal Practice and Procedure: Civil § 2290 at 712. Some courts have interpreted this to include instances where neither the party nor the court could get, through reasonable inquiry, information as to whether the matter was true or false. See id.; see also Martin v. Mabus, 734 F. Supp. 1216, 1224-1225 (D.C. Miss. 1990) (the defendants, in order to respond to the request, would have been required to go beyond a "reasonable inquiry", and thus should not be penalized for the failure to admit).
In this case, the evidence shows that neither the defendants nor the plaintiff's own witness, Dr. Fink, could, with reasonable inquiry, determine exactly at what point the plaintiff's injury occurred.
Based on the foregoing, this Court denies the request to impose sanctions under Rule 37(c) because the defendants' refusal to admit was justified since the defendants had reasonable grounds to believe that they might prevail on the issues and there was other good reason for failure to admit.
 C. Taxation of Costs
Under R.I. Gen. Laws § 9-22-5, the prevailing party is entitled to recover costs in a civil action except where otherwise provided by law or where denied in the discretion of the court and in the interest of justice. 1 Kent, R.I. Pract. § 54.5 at 402. Rule 54(d) of the Superior Court Rules of Civil Procedure tracks § 9-22-5 and specifies that costs shall be allowed as a matter of course to the prevailing party by statute.
As noted, only a prevailing party may recover costs associated with prosecuting or defending an action. In the circumstances of this case the defendant Town of Bristol, defendant Annarumo and the defendant Diniz have prevailed in this action against the plaintiff. Therefore, plaintiff's claim for costs, as it applies to each of those defendants, must be denied.
Costs normally include such items as the entry fee, fees for service of process, witness fees and mileage allowance. Kent R.I. Practice § 54.5 at pg. 402. Indeed, our Supreme Court in Kottis v. Cerilli,612 A.2d 661 (1992) held that "costs are normally considered the expenses of suing another party, including filing fees and fees to serve process. Fees to pay expert witnesses would not be included in this definition of costs."
Thus, the plaintiff's request for taxation of costs in the amount of $2,285.43 for expenses she and her father incurred for lodging, food, beverage and transportation do not qualify as costs and may not be added to the judgment. Pursuant to Kottis v. Cerilli, that $6,337.00 expert witness fee paid to Edward Fisk, M.D. Also may not be recoverable by plaintiff as costs; nor are the fees paid to Dr. Hulstyn of $425. For his deposition testimony, fees paid to the U.S. District Court for copies of court records regarding defendant McGreevy, payment to Northeast Polygraph Services and payment to Fleet Printing and the investigation by Timothy Fitzgerald recoverable as costs.
The request to recover as costs the amount paid to Ms. Dafoular for deposition transcripts in the amount of $715.75 and to Patricia Aloisio for deposition transcript in the amount of $208.00, in the court's discretion, is granted.
 D. Attorney's Fees
Under 42 U.S.C. § 1988, in any action or proceeding to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs, unless special circumstances would render such an award unjust.
Schiff, 684 A.2d at 1130. Unanimous Federal Circuit Court authority has held that attorney's fees, under § 1988, also include an attorney's reasonable and necessary expenses and costs. Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983) Therefore, at the court's discretion, a prevailing party may recover out-of-pocket expenses incurred by the attorney. See id. These include transportation, lodging, parking, food and telephone expenses. See id. Some courts have even gone as far as to award as part of attorney's fees expert witness fees normally not a compensable cost. See id. (citing Jones v. Diamond,636 F.2d 1364, 1382 (5th Cir. 1981)).
A prevailing party is one who succeeds on any significant issues in litigation that achieves some of the benefits sought in bringing about or defending the suit.
Christiansburg v. EEOC, 434 U.S. 412 (1978). In order to recover attorney's fees, the prevailing party has the burden of establishing that the amount requested is reasonable.
See id. At 1131 (citing Hensely v. Echerhart, 461 U.S. 424, 433-434 (1983)). This standard is applicable to a successful plaintiff. Under § 1988, a "prevailing party" defendant in a civil suit may be awarded attorney's fees upon the finding that the plaintiff's actions were frivolous, unreasonable, without foundation or brought in bad faith. DiRaimo v. City of Providence, 714 A.2d 554. 557 (R.I. 1998). An action is frivolous and in bad faith if the plaintiff sought it for purposes of harrassment and embarrassment. See id.
The plaintiff instituted this action under 42 U.S.C. § 1983. The plaintiff did not prevail in her claim against all defendants. As a prevailing party defendant, Town of Bristol should only be able to recover attorney's fees if it can show that the plaintiff's actions were frivolous, unreasonable, without foundation and brought in bad faith.
Defendant Town of Bristol is seeking attorney's fees on the grounds that the plaintiff's claim against the municipality was groundless and frivolous. Specifically, the Town of Bristol contends that it cannot be subject to municipal liability in a constitutional claim unless it is shown that a policy existed that was wrong in application and was responsible for the constitutional violation.
Municipal liability only attaches under § 1983 when a deliberate choice to follow a course of action is made by an official or officials responsible for establishing final policy.
Dyson v. City of Pawtucket, 670 A.2d 233, 238 (R.I. 1996). A municipality may also be sued for constitutional deprivations pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. Monell v. Dept. of Social Serv. of City of New York, 436 U.S. 658, 691 (1978). In order to prove municipal liability, the plaintiff must show that a municipal policy or custom was responsible for the constitutional violation. Armstrong v. Lamy, 938 F. Supp. 1018, 1034 (D.Mass. 1996) The liability cannot be based solely on a respondeat superior cause of action. Leite v. City of Providence, 463 F. Supp. 585, 587 (D.R.I. 1978).
The meaning of municipal liability is an unsettled area of law. There are four grounds for imposing municipal liability. First, a municipality is liable if it enforces an unconstitutional ordinance, regulation or written policy. Britton v. Maloney, 901 F. Supp. 444, 449 (D.Mass. 1995). Next, a municipality is liable if an unwritten or informal municipal policy produces the unconstitutional violation in question. See id. Third, liability may attach where there exists an unconstitutional municipal custom which is "so well settled and widespread" that the policy-making officials of the municipality can be said to have either actual or constructive knowledge of the custom, yet do nothing to end the practice. See id. at 550 (citing Bordenaro v. McLeod, 811 F.2d 1151, 1156 (1st Cir. 1989)). In this instance, the custom develops from the bottom up and the municipality incurs liability not from the creation of the policy but from its tolerance and acquiescence. See id. Finally, a municipality is liable under § 1983 if it is shown that the municipality, through its supervisory officers, acted in a reckless or grossly negligent manner in the supervision, training and hiring of its employees. Christopher L. Cardini, Municipal Liability After City of Oklahoma v. Tuttle: A Single Incidence of Police Misconduct May Establish Municipal Liability Under 42 U.S.C. § When Based On Inadequate Training Or Supervision, 20 Suffolk Univ. L.R. 551, 554-555 (1986). To prove liability, there must be (1) a constitutional violation by a municipal employee, and (2) that violation can be said to have been caused by lack of proper training, supervision or hiring. Britton, 901 F. Supp. at 550. Municipal liability under § 1983 can be shown upon proof of a single incident of police misconduct. Cardini, Muncipal Liability After City of Oklahoma v. Tuttle at 555.
In Leites, the plaintiff claimed that he was beaten by five police officers and that the City of Providence was liable due to its policies of hiring, training, employing and for failure to supervise its officers. 463 F. Supp. at 588. The Leites court concluded that when a municipality is reckless and negligent to the point of being deliberately indifferent to a citizen's constitutional rights, a fact-finder may infer that the municipality acquiesced in or implicitly authorized the inevitable consequences of its deficient policy, police training or supervision. See id. at 591. The court found that if a municipality chooses the method, type and extent of police training, or allows untrained officers to protect its citizens, § 1983 liability should be imposed against the municipality.
See id. The police training or supervision must be so inadequate and the constitutional violation so probable that the municipality can be said to have condoned the inevitable consequences of serious police misconduct. See id. To prove the standard necessary to meet the fault and causation elements, the municipality's inaction or inadequate actions must be near recklessness or shockingly unjustified. See id.
In this case, the plaintiff could support a claim of municipal liability against the defendant Town of Bristol. A jury found that defendant McGreevy negligently fractured the plaintiff's arm. Therefore, it is possible that a fact-finder could determine that the Town of Bristol, (1) was reckless and negligent in the training, supervision, and hiring of its police officers in a manner from which police misconduct was inevitable, and (2) that there was a municipal custom developed from the bottom up of which the municipality had knowledge of and tolerated. The plaintiff's claim against the defendant Town of Bristol was not frivolous, unreasonable, groundless or brought in bad faith. The plaintiff had a good faith and honest belief that her civil rights were violated. As such, the defendant is not entitled to recover attorney's fees as a prevailing party defendant pursuant to42 U.S.C. § 1988.
To summarize, the plaintiff's Motion for an Additur is granted. Judgment shall enter for the plaintiff versus Michael McGreevy in the amount of $37,500.00 plus the statutory interest of 12% commencing November 13, 1993, and costs.
If defendant McGreevy does not agree to such additur of $30,000.00 plus interest from November 13, 1993, then plaintiff's Motion for a New Trial on the issue of damages alone against Michael McGreevy alone is granted.
Further, the plaintiff's motion to recover the costs of deposition transcripts in the total amount of $923.75 is granted.
All other motions filed by the plaintiff or any of the defendants are denied.
Counsel shall prepare and submit a Judgment consistent with this decision.
[1] Admission #4: [T]hat the fracture suffered by the plaintiff on November 13, 1993, was caused by defendant Michael McGreevy.
Admission #7:[T]he fracture suffered by the plaintiff on November 13, 1993, occurred as a direct Result of defendant McGreevy's attempt to place the plaintiff in handcuffs.
[2] Admission #5: [T]he injury suffered by the plaintiff on November 13, 1993, occurred after defendant McGreevy had arrived at the Bristol Clubhouse.
Admission #6: [T]he fracture suffered by the plaintiff on November 13, 1993, occurred after Defendant McGreevy had arrived at the Bristol Clubhouse.
Admission #8: [T]he fracture suffered by the plaintiff on November 13, 1993, occurred after the Plaintiff was taken into custody by defendant McGreevy.